547 F.2d 805
 In the Matter of PEMBROKE MANOR APARTMENTS, a general
partnership, Debtor.
RELIANCE STANDARD LIFE INSURANCE COMPANY, a corporation, and
the Colonial Life Insurance Company of America, a
corporation, Appellees,
v.
PEMBROKE MANOR APARTMENTS, a general partnership, et al., Appellant.
 No. 76-2211.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 11, 1976.
Decided Jan. 5, 1977.
 
 William W. Doster, Charlotte, N. C. (Cruciani & Falls, P. A., Charlotte, N. C., on brief), for appellant.
 Arthur E. Newbold, IV, Philadelphia, Pa. (Neal D. Colton, Dechert Price & Rhoads, Philadelphia, Pa., Ross J. Smyth, David Grier Martin, Jr., Kennedy, Covington, Lobdell & Hickman, Charlotte, N. C., on brief), for appellees.
 Before CRAVEN, BUTZNER and HALL, Circuit Judges.
 CRAVEN, Circuit Judge.
 
 
 1
 This is an appeal from an appellate order of the district court in what began as an adversary proceeding under Chapter XII of the Bankruptcy Act. The order vacated a stay against foreclosure which had been continued in effect by an order of the bankruptcy judge. We reverse.
 
 
 2
 * Pembroke Manor Apartments, appellant and debtor in possession, is a partnership which operates an apartment complex of like name in Gastonia, North Carolina. The insurance companies hold a first mortgage on the partnership property securing debts in excess of $1.5 million. The 1974 business recession reduced the occupancy of the apartments from 100% to only 55% by February of 1976. The Chapter XII petition was filed on March 5, 1976. Because no trustee in bankruptcy had previously qualified, the filing of the petition entitled the debtor to continue in possession as trustee, 11 U.S.C. § 844 & Bankruptcy Rule 12-17(b); moreover, the filing of the petition itself operated to stay all proceedings to foreclose against the debtor's property. 11 U.S.C. § 823 & Bankruptcy Rule 12-43(a). On the other hand, Section 445 of the Bankruptcy Act requires that the debtor be expressly authorized to continue actual operation of the business. 11 U.S.C. § 845 & Bankruptcy Rule 12-22. An appropriate order to that effect, merely incorporating the automatic provisions on continuance in possession and stay of foreclosure, was entered by the bankruptcy court on March 10, 1976. The adversary proceeding to overturn the stay was begun by the insurance companies on March 31.
 
 
 3
 At a hearing on May 17, 1976, the bankruptcy judge declined to decide whether to order liquidation. By order dated May 21 he specifically continued his stay order in effect. Had he not done so, it would have been automatically continued under Bankruptcy Rule 12-43(b). An immediate appeal was taken and the district court granted the insurance companies the right to foreclose thus effectively ending the Chapter XII proceeding.
 
 II
 
 4
 We view the initial appeal to the district court as premature.[1] Taken together with the bankruptcy judge's contemporaneous findings of fact and conclusions of law, it is apparent that the order was entered pursuant to no more than a "pretrial" hearing.[2] Indeed, the debtor in possession, which had the ultimate burden of demonstrating its entitlement to a continuance of the stay, Bankruptcy Rule 12-43(a), was assured by the bankruptcy court on May 11 that the forthcoming hearing would be "pretrial" in nature. And the transcript of the hearing reveals that its purpose, as viewed by the bankruptcy judge, was to expedite the filing of a plan in order that "the question of the confirmation of the Plan and the issue of the complaint" might eventually be heard together. T-60.
 
 
 5
 These signs of tentativeness, coupled with the bankruptcy judge's discretionary power over the allowance of stays during the pendency of a plan, 11 U.S.C. § 814, Kunze v. Prudential Ins. Co., 106 F.2d 917, 918 (5th Cir. 1939), suggest the district court should not have entertained an appeal at this stage.[3]
 
 
 6
 Confusion appears to have been introduced by the findings of the bankruptcy judge as to the value of the appellees' security. Based on those findings the district court prematurely concluded that there was no equity in the debtor's property. The findings, however, were made at the request of the debtor in possession pursuant to Section 453 of the Bankruptcy Act. 11 U.S.C. § 853. That Section, together with the corresponding Bankruptcy Rule 12-31(b), authorizes the bankruptcy judge "to determine summarily the value of the security and classify as unsecured the amount in excess of such value."[4] The limited purpose of Section 453 is to produce a liquidation value for a creditor's security so that the creditor, if found to be only partially secured, may vote on the plan in his capacity both as a secured and as an unsecured claimant. Accordingly, the bankruptcy judge found that the current fair market value of the debtor's property was only.$1.2 million and that the appellees were secured creditors to that extent.
 
 
 7
 The district court erroneously compared the.$1.2 million figure to the outstanding debt of around $1.5 million and concluded there was no equity and no likelihood of a successful plan. The liquidation value, however, does not necessarily reflect the earning power of the property as a going concern ; and the latter remains the touchstone for confirmation of any plan. Cf. Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 526, 61 S.Ct. 675, 85 L.Ed. 982 (1941). Like a reorganization, an arrangement is intended to avoid forced liquidation sales; accordingly, "fair market" and "liquidation" values must be considered as "clearly improper" standards for judging the success of a plan. See 6A Collier on Bankruptcy P 10.13, p. 474 (1972). Rather it is the capitalization of projected future earnings that determines whether the plan is both "for the best interests of creditors and . . . feasible." 11 U.S.C. § 872(2).
 
 
 8
 As the Supreme Court said in the analogous reorganization context: "The criterion of earning capacity is the essential one if the enterprise is to be freed from the heavy hand of past errors, miscalculations or disaster, and if the allocation of securities among the various claimants is to be fair and equitable." Consolidated Rock Products Co. v. Du Bois, supra, 312 U.S. at 526, 61 S.Ct. at 685. And so long as the going-concern value of the property here exceeds its liquidation value, a plan has a good chance of success. 9 Collier on Bankruptcy P 9.07, p. 1138 (1976).
 
 
 9
 The bankruptcy judge, affirming his continued open-mindedness on the ultimate question of valuation, noted that the earnings situation of the debtor in possession was "improving." T-49-50, 53. His finding of.$1.2 million for purposes of Rule 12-31(b) is quite consistent with the eventual confirmation of a plan and, quite apart from any notice problem,[5] is equally consistent with his interim refusal to decide appellees' original complaint one way or the other.
 
 
 10
 We vacate the order of the district judge and reinstate the stay order of the bankruptcy judge pending further proceedings. On remand the district judge will in turn remand to the referee in bankruptcy for further proceedings to consider and pass upon the feasibility of a plan of reorganization and to hear further evidence and make definitive findings of fact with respect to feasibility and particularly with respect to going-concern value of the apartment house.
 
 
 11
 REVERSED.
 
 
 
 [1]
 Nothing in the Act or the old General Orders would appear to restrict the judge in reviewing an interlocutory order of the referee, but judges have exhibited considerable reluctance to do so, especially where the order is a mere preliminary step in a proceeding
 
 
 [13]
 Collier on Bankruptcy P 801.06, p. 8-7 (1976)
 
 
 [2]
 Bankruptcy Rule 716 makes Rule 16 of the Federal Rules of Civil Procedure applicable in adversary proceedings
 
 
 [3]
 A plan was subsequently filed, and trial of the adversary proceeding was recalendared for July 16, 1976; however, the premature appeal thwarted consideration of either. At present neither the bankruptcy nor the district judge has ever considered the plan and its feasibility. It is not even made a part of the record on appeal
 
 
 [4]
 The Rule provides that the determination may be "on such notice as the court may direct." Thus the May 17 hearing, while "pretrial" for Rule 12-43(a) purposes, was adequate and complete in terms of Rule 12-31(b)
 
 
 [5]
 On appeal the debtor has primarily contended that the appellate order of the district court violated the Fifth Amendment because adequate notice and opportunity to be heard was denied it, given the announced "pretrial" nature of the May 17 hearing