851 F.Supp. 1322 (1993)
James W. WIEHOFF, Plaintiff,
v.
GTE DIRECTORIES CORP., GTE Directories Sales Corp., and GTE Directories Service Corp., d/b/a GTE Sun Community Directories, Defendants.
Civ. No. 3-91-770.
United States District Court, D. Minnesota, Third Division.
December 27, 1993.
Joseph W. Hammell and Catherine R. Landman, Dorsey & Whitney, Minneapolis, MN, for plaintiff.
John W. Polley and Patricia K. Oakes, Faegre & Benson, Minneapolis, MN, for defendants.

*1323 MEMORANDUM OPINION AND ORDER
KYLE, District Judge.

Introduction
Before the Court is defendant GTE Directories Corporation, GTE Directories Sales Corporation and GTE Directories Service Corporation's (collectively "GTE") Motion for Judgment as a Matter of Law, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, on plaintiff Wiehoff's claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (1988) ("ADEA" or "Act") and the Minnesota Human Rights Act, Minn.Stat. § 363.01 et seq. (1992) ("MHRA"). These claims were tried to a jury from November 1 to November 10, 1993.[1] At the close of the plaintiff's case, GTE moved for judgment as a matter of law on both the federal and state law claims. The Court granted the motion with regard to claims of retaliation under the ADEA and MHRA; the motion was denied in all other respects. At the close of all the evidence, GTE renewed its motion for judgment as a matter of law, pursuant to Rule 50(b); that motion was denied and the matter was submitted to the jury. Following three days of deliberation, the jury unanimously declared that it was deadlocked; the Court accordingly declared a mistrial and discharged the jury on November 15, 1993. GTE timely filed this motion, which will be decided on the papers, without oral argument.
GTE moves for judgment as a matter of law on two grounds: With respect to Wiehoff's age discrimination claim under the ADEA, GTE argues that the plaintiff has only adduced evidence to support a claim for a "willful" violation; therefore, his ADEA claim is barred by the statute of limitations.[2] GTE also contends that Wiehoff failed to adduce sufficient evidence at trial to allow a jury to find that GTE discriminated against him on the basis of his age, and that GTE is entitled to judgment in its favor on the federal and state law claims as a matter of law.

Background
Plaintiff James Wiehoff is a 68-year-old resident of Minnesota. From 1981 to April of 1987, Wiehoff worked for Sun Community Directories ("Sun"), a division of Cowles Media. Wiehoff travelled to businesses in the Twin Cities metropolitan area and sold them yellow page advertising space in community directories. In 1987, defendant GTE Directories, Inc. acquired Sun from Cowles; Sun became GTE's Minneapolis Division. At the time of the acquisition, GTE retained all of the sales representatives on the Sun payroll. For the remainder of 1987, business was conducted as it had been under Sun's management. In 1988, however, GTE began to implement a number of changes.
In January of 1988, GTE terminated five former Sun sales representatives (but not Wiehoff) as part of a reduction in force. GTE then brought a new Division Manager, Kathleen Buffington, to the Minneapolis Division for the purpose of bringing that division into compliance with GTE's policies and procedures. GTE organized the Minneapolis Division into two units: a premise sales unit, in which representatives went into the community to contact clients; and a telephone sales unit, in which representatives stayed in the office and contacted clients and prospective clients by telephone.
Most notably, GTE changed the manner in which sales representatives worked and were paid. Under Sun, sales representatives were paid strictly on commission; they received a commission whether an account increased its advertising or merely renewed. Furthermore, Sun sales representatives had tremendous latitude to develop accounts. They were allowed to "follow themselves,"  i.e., return to the same customers each year to seek their renewals. Under GTE's policy, each community directory represented a "market;" each market was broken into "territories" of equal dollar revenue. Sales representatives received a base salary and earned commissions only if they increased their territories by a predetermined amount, known as a "budget."
Data generated by GTE's sales division indicated that Wiehoff experienced difficulty achieving his "budget." Evidence adduced at trial showed that Wiehoff received "field *1324 coaching" from his immediate supervisor, Tom Joseph, on several occasions in the first half of 1988; Wiehoff continued to experience problems achieving "budget." Ms. Buffington transferred Wiehoff from the premises sales unit to the telephone sales unit in July of 1988. After Wiehoff had worked a short time in telephone sales, Ms. Buffington decided to terminate Wiehoff's employment. Wiehoff was fired from GTE on or about August 26, 1988, and this action followed.

Discussion

I. Standard for Judgment as a Matter of Law
A motion for judgment as a matter of law may be granted where "a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." F.R.Civ.P. 50(a)(1). A motion for judgment as a matter of law may be renewed after a jury has failed to return a verdict, by service and filing not later than 10 days after the jury has been discharged. F.R.Civ.P. 50(b); see O'Brien v. Thall, 283 F.2d 741, 742 (2d Cir.1960) (per curiam); see also 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2537 (1971). In evaluating a motion for judgment as a matter of law the Court must
(1) resolve factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would not allow reasonable jurors to differ as to the conclusions to be drawn.
Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 651 (8th Cir.1989) (citation omitted).

II. The Statute of Limitations Issue
GTE argues that the Court must dismiss Wiehoff's ADEA claim as time-barred because the evidence adduced at trial is consistent only with a claim for a `willful' violation of the Act. Wiehoff responds that the defendant has confused the concepts of intentional conduct that violates the Act with knowledge or reckless disregard for whether such conduct violates the Act. Only the latter constitutes a "willful violation" of the Act.
The Court will consider, first, the definition of a "willful violation" and, second, the ramifications of that definition for the statute of limitations.

A. Willful Violations of the ADEA
The concept of a "willful violation" of the ADEA arises in two contexts. First, the statute provides that an employee who is the victim of a "willful" violation of the ADEA is entitled to liquidated damages. 29 U.S.C. § 626(b). Second, the Act defines the limitations period in terms of whether a claim alleges a willful or non-willful violation; a claim for a "non-willful" violation of the ADEA must be commenced within two years after the cause of action accrued, while a claim for a "willful" violation must be filed within three years after accrual of the cause of action. 29 U.S.C. § 626(e) (referencing the statute of limitations set forth in the Portal-to-Portal Pay Act, 29 U.S.C. § 255(a)).[3] The term "willful" carries the same meaning in both contexts. See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132-35, 108 S.Ct. 1677, 1681-82, 100 L.Ed.2d 115 (1988) (construing the Fair Labor Standards Act, which also utilizes the limitations periods set forth in the Portal-to-Portal Act); EEOC v. Chrysler Corp., 729 F.Supp. 1002, 1006 (S.D.N.Y.1990).[4]
*1325 The Supreme Court defined a "willful" violation of the ADEA as one in which the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Hazen Paper Co. v. Biggins, ___ U.S. ___, ___, 113 S.Ct. 1701, 1708, 123 L.Ed.2d 338 (1993) (quoting Trans World Airlines v. Thurston, 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985)). In Hazen Paper, the Supreme Court criticized a number of circuits, including the Eighth Circuit, for refusing to apply the Thurston standard and award liquidated damages in "an informal disparate treatment case where age has entered into the employment decision on an ad hoc, informal basis rather than through a formal policy."[5] ___ U.S. at ___, 113 S.Ct. at 1709. These circuit courts reasoned that every employer who engages in informal age discrimination knows or recklessly disregards the illegality of its conduct; therefore, modification of the showing required to establish a "willful violation" was necessary to preserve the two-tiered system of liability identified in Thurston.[6]
The Hazen Paper Court found the circuits' concerns about the two-tiered liability system to be "misplaced;" the principle of two tiers of liability was "simply one interpretive tool among several" used to decide what Congress meant by "willful." Id. The Court concluded that the plain language of the statute requires an award of liquidated damages whenever a violation was "willful" under the definition set out in Thurston. The Court stated its belief that uniform application of the Thurston standard of "knowledge or reckless disregard" would continue to maintain two tiers of liability across the range of ADEA cases, and provided examples of situations in which an employer could "non-willfully" violate the ADEA.[7]Id.
The Court held that the employer in Hazen Paper had committed a willful violation of the ADEA; the employee's age constituted "an undisclosed factor motivating the employer on an ad hoc basis." Id. The Court reasoned that "it would be a wholly circular and self-defeating interpretation of the ADEA to hold that, in cases where an employer more likely knows its conduct to be illegal, knowledge alone does not suffice for liquidated damages." Id. at ___, 113 S.Ct. at 1710.
The Hazen Paper decision changed Eighth Circuit law regarding the showing required to establish a "willful violation." Prior to Hazen Paper, the Eighth Circuit interpreted the Thurston standard to mean that a trier of fact may properly find willfulness only "if the people making the employment decision know that age discrimination is unlawful and if there is direct evidence  more than just an inference from, say, an arguably pretextual justification  of age-based animus." Neufeld v. Searle Laboratories, 884 F.2d 335, 340 (8th *1326 Cir.1989). Following Hazen Paper, our circuit echoed the Supreme Court's admonition that "the focus should strictly be on whether the employer's actions were in willful violation of the ADEA as provided in the statute." Brown v. Stites Concrete Inc., 994 F.2d 553, 560 (8th Cir.1993) (en banc).
Brown, like Hazen Paper, involved the award of liquidated damages under the ADEA. The court of appeals reviewed a jury instruction regarding willfulness and concluded that, taken as a whole, the instruction stated the law as set forth in Thurston and Hazen Paper. The instruction stated:
[A] violation is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the federal law under which the plaintiff sues in this case. And the violation is willful if it's done voluntarily and deliberately and intentionally and not by accident or inadvertence or ordinary negligence. And, in this connection, you can consider statements made or acts done or omitted and all facts or circumstances which show whether or not the defendant acted intentionally and not by accident.
The court found the first part of the second sentence to be problematic because "it equates `willfully' with `voluntarily' in the ADEA context when it is a willful violation of the law as opposed to voluntary conduct in general that is required." Id. at 560. The court determined, however, that it was not reversible error to include that portion of the sentence, given the context of the whole instruction. It found that the last sentence of the instruction adequately reflected the law after Hazen Paper, since neither direct nor additional evidence is any longer required to establish willfulness.[8]Id. at 560-61. The court held that the district court did not abuse its discretion in the formulation of the jury instruction. Id. at 561.
The dissent in Brown found that the last two sentences in the instruction were inconsistent and misleading, impermissibly shifting the jury's focus from the nature of the employer's violation to the nature of its conduct and allowing the jury to find a willful violation if the defendant acted intentionally. Brown, 994 F.2d at 562 (Loken, J., dissenting). The dissent observed that the plaintiff's counsel, having received the jury instructions prior to closing arguments, capitalized upon the misleading instruction and further blurred the distinction between intentional conduct and a willful violation of the ADEA. Id. The dissent concluded that the district court did not properly define the issue of willfulness for the jury, noting that considerable evidence supported the conclusion that the employer had made a good faith and reasonable employment decision, in which age was admittedly a factor, rather than an intentional or reckless violation of the ADEA. Id.

B. The Statute of Limitations
Wiehoff was notified of his discharge on August 22, 1988; he filed a claim with the Minnesota Department of Human Rights on December 8, 1988. As set forth in this Court's Memorandum Opinion and Order, dated June 22, 1993, Wiehoff's charge enjoyed a protracted life at the agency level. Wiehoff brought suit on November 8, 1991, over three years after the cause of action had accrued. GTE moved the court for partial summary judgment on Wiehoff's ADEA claims on the ground that they were time-barred.
Wiehoff responded that his claims were saved by the Age Discrimination Claim Assistance Act ("ADCAA"). The ADCAA extended the period in which certain eligible claimants could file suit, despite expiration of the ADEA's limitations period. One prerequisite for the availability of an extension was that the claim expired within a "window" of time defined in the ADCAA.
This Court determined that, although Wiehoff's "non-willful" claim expired within the requisite window, the "willful" claim expired too late to be revived by the ADCAA. Therefore, the Court granted GTE's motion for partial summary judgment to the extent that Wiehoff's Complaint alleged a "willful" violation of the ADEA, but denied GTE's motion to the extent that the Complaint alleged *1327 a "non-willful" violation. Reviewing the Complaint, this Court observed that, "[w]hile the alleged conduct certainly appears `intentional' or `willful' in the ordinary sense of the word, a plain reading of the Complaint cannot be said to limit the Complaint to only a `willful' violation of the ADEA." Order at 14-15. This Court also noted that, with respect to identifying a willful versus a non-willful violation of the ADEA, "whether the period of limitations is two or three [years] depends on what the plaintiff proves.... the length of the period under [29 U.S.C. § 626(e)] is a matter of proof rather than pleading." Order at 16 n. 13 (quoting Zabielski v. Montgomery Ward & Co., 919 F.2d 1276, 1280 (7th Cir.1990)).
GTE argues that the Court is no longer bound by a plain reading of the Complaint; this case has been tried and the evidence presented. For purposes of this aspect of its motion, GTE is willing to assume that its employment decisions violated the ADEA. GTE asserts that the evidence presented simply cannot be construed as stating a "nonwillful" violation  that is, that GTE "incorrectly but in good faith and nonrecklessly believed" that the ADEA permitted GTE to transfer and subsequently terminate the plaintiff. Key to GTE's argument is the testimony of Ms. Buffington, who made the challenged employment decisions, that she knew during the relevant time period that age discrimination with respect to employment decisions violated federal law.
Wiehoff responds that the defendant has confused voluntary conduct with knowledge or reckless disregard for whether that conduct violates the ADEA. Wiehoff points to Brown v. Stites Concrete, in which the Eighth Circuit noted that part of the contested jury instruction was problematic, equating "willfully" with "voluntarily" and thereby confusing the concept of a willful violation of the statute with voluntary conduct in general. 994 F.2d at 560. This Court has previously recognized the distinction between the general intent to act and the more specific intent to violate the law. See Memorandum Opinion and Order, June 22, 1993, at 14-15. This Court finds, however, that this distinction is not material to the issue now before the Court. The issue presented by GTE's motion is whether GTE's knowledge of the ADEA's prohibition against age-based employment decisions, plus the evidence presented at trial to demonstrate GTE's disparate treatment of Wiehoff, can state a claim for a "non-willful" violation of the ADEA. GTE contends that it cannot.
Two aspects of the Hazen Paper decision militate strongly in favor of GTE's position. First, Hazen Paper held that the Thurston standard applies, without qualification, to informal disparate treatment cases, thereby indicating that it is possible to find "knowledge or reckless disregard" in a claim of age discrimination of the sort alleged in Wiehoff. Second, the Court appeared to indicate an awareness that, by so holding, it was expanding the sphere of "willful" violations; it therefore went to some pains to demonstrate by examples that certain violations of the ADEA could be non-willful and that a two-tier liability system still exists.[9]
The Supreme Court has repeatedly rejected the argument that an employer's conduct is "willful" if the employer is merely "cognizant of an appreciable possibility that the employee involved was covered by the ADEA;" that is, if the ADEA is somehow "in the picture."[10] "Reckless disregard" clearly *1328 requires more than a showing that the employer objectively "should have known" that its conduct violated the Act; the employer must have demonstrated both a disregard for the statute and an indifference to its requirements. See Thurston, at 125-29, 105 S.Ct. at 624-25. The Court finds that more than mere cognizance has been implicated here. Wiehoff's case-in-chief alleged that GTE targeted him for disparate treatment because of his age for the purpose of setting him up for failure under the new management system. Applying the standard set forth in Omaha Employees' Betterment Association for Rule 50 motions, the Court finds that Wiehoff has failed to adduce any evidence from which a reasonable jury could determine that, if GTE in fact discriminated against Wiehoff on the basis of his age, GTE acted with anything less than reckless disregard for the illegality of its conduct. Therefore, the Court holds that Wiehoff's ADEA claim, as presented at trial, is time-barred.[11]

III. The MHRA Claim.
There remains before the Court Wiehoff's claim of age discrimination under the MHRA, alleged in Count I of the complaint. GTE has argued that, with respect to that claim, there is insufficient evidence from which a finder of fact could conclude that age was a determining factor in its employment decisions with respect to Wiehoff. GTE contends that the evidence overwhelmingly indicates that legitimate, performance-based criteria motivated its decisions to transfer and later terminate Wiehoff. Wiehoff responds that the evidence he has adduced is adequate to allow a factfinder to determine that age was a determining factor, although concededly not the only factor, in GTE's employment decisions. Applying the standard set forth in Omaha Employees' Betterment Association, the Court denies GTE's motion for judgment as a matter of law on the MHRA claim.
Having determined that the ADEA claim is time-barred, the MHRA claim remains for decision by the Court; both parties have suggested that the Court should now proceed to determine the MHRA claim. Accordingly, the Court will allow the parties to submit proposed findings of fact and conclusions of law with respect to the liability issue under the MHRA.[12]

Conclusion
Accordingly, pursuant to the foregoing, and upon all the files, records and proceedings herein, IT IS ORDERED that
(1) GTE's Motion for Judgment as a Matter of Law (Doc. No. 148), made at the close of the plaintiff's case in chief, is GRANTED with respect to the plaintiff's claims of retaliatory discharge under the ADEA and MHRA and otherwise DENIED; those portions of the plaintiff's Complaint alleging retaliatory discharge are dismissed with prejudice.
(2) GTE's renewed Motion for Judgment as a Matter of Law (Doc. No. 158) is GRANTED IN PART, with respect to plaintiff's ADEA claim, and DENIED IN PART, with respect to plaintiff's MHRA claim; Count II of plaintiff's Complaint, alleging violation of the ADEA, is dismissed with prejudice; and
(3) either party desiring to submit Proposed Findings of Fact and Conclusions of Law with respect to the issue of defendants' liability under the MHRA may do so on or before January 14, 1994.[13]
NOTES
[1] Wiehoff's MHRA claims, with respect to which Wiehoff is not entitled to a trial by jury, were submitted to the jury in an advisory capacity.
[2] See infra section I.B.
[3] The 1991 amendments to the ADEA deleted the reference to the statute of limitations set forth in the Portal-to-Portal Act. Civil Rights Act of 1991, Pub.L. No. 102-166, § 115, 105 Stat. 1071, 1079 (1991).
[4] Justice Marshall, dissenting in McLaughlin, observed that the Court in Trans World Airlines v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), expressly left open the possibility that the "knowledge or reckless disregard" definition of "willful," adopted there with respect to the provision for punitive damages under the ADEA, may not be appropriate for the Fair Labor Standards Act's statute of limitations. McLaughlin, 486 U.S. at ___, 108 S.Ct. at 1684 (citing Thurston, 469 U.S. at 125-29 & n. 21, 105 S.Ct. at 624-25 & n. 21). Justice Marshall criticized the Court for failing to recognize the important contextual differences between the punitive damages provision and the statute of limitations that would call for different standards of "willfulness." Id.
[5] For example, at least one circuit refused to impose liquidated damages unless the employer's conduct was "outrageous." The Eighth Circuit required that the underlying evidence of liability be direct rather than circumstantial before it would term the violation "willful." Neufeld v. Searle Laboratories, 884 F.2d 335 (8th Cir.1989). Other courts of appeals required that age be a "predominant" rather than a merely determinative factor. See Hazen Paper, ___ U.S. at ___, 113 S.Ct. at 1709 (citing cases).
[6] The Eighth Circuit expressed its concern in Neufeld v. Searle Laboratories, 884 F.2d 335 (8th Cir.1989). The court of appeals characterized Thurston as a disparate-impact case  a description rejected by the Court in Hazen Paper. See ___ U.S. at ___, 113 S.Ct. at 1706 ("[W]e have never decided whether a disparate impact theory of liability is available under the ADEA ...") The Eighth Circuit focused on the problem confronting courts when attempting to ascertain "willfulness" in informal disparate treatment cases:

... [D]isparate treatment cases involve charges of specific bias focused against a particular victim. In these cases, it is harder to distinguish between simple and willful discrimination, since a violator's motive in discriminating against a specific person is less easily explained as inadvertence or mistake than it might be in a disparate-impact context.
884 F.2d at 340.
[7] The ADEA is not an unqualified prohibition on the use of age in employment decisions, but affords the employer a "bona fide occupational qualification" defense, and exempts certain subject matters and persons. If an employer incorrectly but in good faith and nonrecklessly believe[] that the statute permits a particular age-based employment decision, then liquidated damages should not be imposed.

Hazen Paper, ___ U.S. at ___, 113 S.Ct. at 1709 (citations omitted). The "subject matters and persons" referred to include bona fide seniority systems and employee benefit plans, and bona fide executives and high policymakers. Id.
[8] "The question is not whether the evidence used to establish willfulness is different from and additional to the evidence used to establish a violation of the ADEA, but whether the evidence  additional or otherwisesatisfies the distinct standard used for establishing wilfulness." Brown, 994 F.2d at 560.
[9] Generally, expansion of the category of "willful" violations would benefit the plaintiff in an age discrimination suit by making available a longer limitations period and the likelihood of receiving liquidated damages. This case is unusual, however, due to the operation of the ADCAA. To qualify for revival of an ADEA claim, the claim must have expired prior to May 2, 1991. The longer limitations period for a claim of a willful violation makes it more likely that such a claim would expire outside the "window" for revival. The ADCAA therefore reverses the roles of the parties in this action; it is to the plaintiff's advantage to argue that he has claimed only a non-willful violation of the statute, while the defendant would prefer to show that any violation of the federal statute must have been willful.
[10] See McLaughlin v. Richmond Shoe Co., 486 U.S. 128, 132-33, 108 S.Ct. 1677, 1680-81, 100 L.Ed.2d 115 (1988) (construing identical language in the Fair Labor Standards Act and finding that an "in the picture" standard would wipe out any distinction between willful and non-willful violations); Thurston, 469 U.S. at 125-29, 105 S.Ct. at 624-25 (noting that such a broad definition of "willful" would result in an award of double damages in almost every case).
[11] Having determined that plaintiff's ADEA claim is time-barred, it is not necessary to address the second basis upon which GTE has moved for judgment as a matter of law on that claim, namely that plaintiff has failed to adduce sufficient evidence to allow a reasonable jury to conclude that age was a determining factor in GTE's employment decisions regarding Wiehoff.
[12] At trial, evidence concerning damages that are unique to the MHRA, such as emotional distress, was not received; the Court advised the parties that such evidence, as well as evidence relating to attorney's fees, would be addressed, if necessary, in a subsequent proceeding. It is the Court's intention to proceed in like manner here. If the Court determines that there is liability under the MHRA, the Court will promptly schedule an evidentiary hearing on the issue of damages. If the Court determines that there is no liability, the damages issue will be moot.
[13] The Court has previously received memoranda, and heard oral argument, from the parties with respect to the liability issue. Additional memoranda in support of the Proposed Findings of Fact and Conclusions of Law are not encouraged. There will be no oral argument.